## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN

ANDRICA CAGE, as Personal
Representative of the ESTATE OF
SAMUEL STERLING, *(deceased)*

    *Plaintiff*,

v.

BRIAN KEELY,
in his individual capacity,

    *Defendant*.

Case No.
Hon.

## COMPLAINT & JURY DEMAND

**NOW COMES** Plaintiff ANDRICA CAGE, as Personal Representative of the Estate of Samuel Sterling, by and through her counsel, VEN JOHNSON LAW, PLC, and BEN CRUMP LAW, PLLC, and for her Complaint against the above-named Defendant states as follows:

### JURISDICTION & VENUE

1. This action arises under the United States Constitution; the laws of the United States, including but not limited to 42 U.S.C. §§ 1983 and 1988; and under the statutes and common law of the State of Michigan.

2. This Court has original jurisdiction over the claims raised in this action under 28 U.S.C. § 1331.

3. This Court also has supplemental jurisdiction over the state law claim asserted under 28 U.S.C. § 1367.

4. The events that gave rise to this action took place in Kent County.

5. Venue is proper, pursuant to 28 U.S.C. § 1391(b), because Kent County is in the Western District of Michigan.

6. Plaintiff Andrica Cage is a United States citizen and the mother of Plaintiff Decedent, Samuel Sterling, and brings this civil action in her capacity as Personal Representative of the Estate of Samuel Sterling ("Estate"), pursuant to MCL 600.2921, *et seq.*, and MCL 600.2922, *et seq.*

7. At all relevant times, Defendant Brian Keely ("Keely") was a Detective Sergeant law enforcement officer with the Michigan State Police ("MSP") for over 25 years and an employee of the State of Michigan, acting under color of state law, and within the course and scope of his employment.

## FACTUAL ALLEGATIONS

8. Each of the above paragraphs are incorporated here by reference.

9. Keely was assigned to work with MSP's 6th District Special Investigative Services[*], which was a unit that worked with U.S. Marshals Service, as well as other

---

[*]Notably, the terms of Keely's deputation explicitly stated that his "appointment does not constitute employment by the United States Marshals Service, the United States Department of Justice, or the United States Government. The appointee agrees to perform the duties required under this Special Deputation with the knowledge that he or she is neither entering into an employment agreement with the Federal Government or any element thereof, nor being appointed to any

2

local fugitive task forces, to arrest individuals with outstanding state and/or federal warrants.

10. The State of Michigan provided Keely with an unmarked 2021 Hyundai Palisade ("SUV") "in order to facilitate covert surveillance of wanted fugitives."

11. In his own signed statement, Keely described himself as an experienced law enforcement officer, who had "specialized training through Effective Fitness Combatives on how to safely arrest a resisting suspect when there are multiple officers arriving at different times" and without using a motor vehicle as a lethal weapon.

12. On April 17, 2024, Keely was assisting a local task force unit, Metro Pattern Crime Team[†] (MPACT), to arrest Samuel on an active, state-issued warrant.

13. Months earlier, in January of 2024, Samuel had managed to escape capture when he was pursued by a patrol car.

14. On the morning of April 17, 2024, Keely, along with other MPACT task force members, attended a briefing at the Wyoming Police Department ("WPD") to discuss their plan to arrest Samuel. The MPACT members planned to execute the arrest on foot, not while driving.

---

position in the Federal Services by virtue of this Special Deputation." *Special Deputation Appointment*, December 6, 2023.
[†]MPACT was launched by the Kent County Sheriff's Office, Wyoming Police Department, and Kentwood Police Department.

15. After the briefing, Keely drove his unmarked SUV towards the area in which Samuel had allegedly been residing, which was located near 52nd Street and South Glow Court SE and 52nd.

16. Samuel was spotted driving a white Chevy Equinox ("Equinox"). Keely followed Samuel so he could "relay [Samuel's] activity to the detective group on the radio."

17. Samuel pulled into a gas station, located at 815 52nd Street SE in Kentwood, Michigan, 49508, and parked near an air pump.

18. Keely radioed that Samuel had parked his vehicle in the gas station's parking lot. Other assigned officers responded that they had eyes on Samuel and indicated he appeared to have exited the Equinox to check its tires.

19. MPACT officers communicated over the radio, coordinating how best to affect Samuel's arrest at the gas station, while he remained outside of the Equinox and on foot.

20. Keely, together with other law enforcement officials, all of whom operated unmarked undercover vehicles, pulled into the gas station and surrounded the Equinox.

21. As other officers exited their respective vehicles, Keely remained in the unmarked SUV.

22. Several officers, all of whom were wearing police vests in view, approached Samuel on foot, at which time Samuel ran to 52nd Street.

23. At the time Samual fled, as is documented in the preliminary surveillance in which Keely participated with the other officers, none of the officers suspected or reported seeing any weapons on Samuel's person or in his possession.

24. All undercover officers assigned to assist in Samuel's arrest, *with the exception of Keely*, ran behind Samuel on foot.

25. On a weekday, at approximately 11: 54 a.m. and amidst lunch-hour traffic, Keely quickly exited the gas station and joined the foot pursuit in his unmarked SUV.

26. Positioned in front of Keely's SUV was a trooper, who was part of MSP's Emergency Support Team, operating a fully marked MSP Chevy Tahoe.

27. Keely's written statement reflects his intent and consideration in deciding to enter the foot pursuit using an SUV rather than running on foot. Keely highlights, among other things, that a vehicle equipped with emergency lights, like the SUV, would assist the officers on foot by alerting motorists in "the busy 52nd [Street] and busy strip mall parking lot" where Samuel had fled.

28.  Samuel entered the strip mall from 52nd Street, and ran towards a Burger King, located at 5260 Eastern Avenue SE, Kentwood, Michigan, 49508.

29. The officers on foot began to close in on Samuel, as he headed towards the Burger King's drive-thru lane.

30. Nonetheless, Keely continued his pursuit, driving towards the direction of the lunch-hour drive-thru lane, targeting Samuel with his SUV.

31. As Keely drove from behind Samuel, on the left side of Samuel's body, a brick wall, which ran along the same side of the Burger King building as did the drive-thru lane, was positioned to Samuel's immediate right.

32. As he drove over a raised curb, Keely continued to aim the SUV at Samuel, slamming Samuel against the brick wall of the building and pinning Samuel's body with the SUV's front passenger side.

33. Keely's pursuit came to a deadly end slightly over 1,000 feet from where it began.

34. Kentwood Fire Department urgently transported Samuel to University of Michigan Health West Hospital via ambulance.

35. Less than five hours later, Samuel was pronounced dead.

36. Samuel's death was a direct result of the multiple blunt-force injuries he sustained when Keely struck him with the SUV.

37. Pursuant to MSP's official policy order, an unmarked vehicle "shall not initiate or engage in vehicle pursuits."

38. "Nationally, on average, according to statistics from the U.S. Department of Justice, crashes occur in at least 30 percent of vehicle pursuits, and injuries or fatalities occur in 5 to 17 percent of pursuits." *MSP Newsroom*, March 14, 2024.

39. As the direct and proximate result of Defendant's actions and inactions, Samuel suffered injuries and damages, including but not limited to the following:

    a.    Fright and shock;

    b.    Denial of social pleasure and enjoyments, past and future;

    c.    Embarrassment, humiliation, or mortification;

    d.    Punitive damages;

    e.    Denial and deprivation of his freedom of movement;

    f.    Denial and deprivation of civil rights;

    g.    Denial and deprivation of due process;

    h.    The Estate, which incorporates Samuel's heirs at law, is entitled to certain damages that minimally include "reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased," MCL 600.2922 (6); and all other lawful damages that Samuel would have been able to recover had he lived, in accordance with but not limited to MCL 600.2921 and MCL 600.2922.

**WHEREFORE**, Plaintiff respectfully demands a monetary judgment for damages against Defendant together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT I
### 42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS
### FOURTH & FOURTEENTH AMENDMENTS – EXCESSIVE FORCE
### AS TO DEFENDANT BRIAN KEELY

40. Each of the above paragraphs are incorporated here by reference.

41. Samuel had a clearly established right under the Fourth and Fourteenth Amendments to not be subjected to excessive or unreasonable force while being arrested by a law enforcement officer, even if the arrest was otherwise made in accordance with the law.

42. Defendant Keely, while acting under color of law, intentionally committed acts that violated Samuel's constitutional rights to not be subjected to excessive or unreasonable force during an arrest.

43. At no time did Samuel threaten Defendant Keely or act in a manner that would cause a reasonable officer in Defendant Keely's position to reasonably fear that Samuel posed an immediate violent threat to Defendant Keely or others.

44. Defendant Keely was attempting to arrest Samuel for a non-emergent property offense.

45. Even if there was a need for the application of force in this situation, the amount of force Defendant Keely applied was not proportionate to the need of force.

46. Samuel's death, which was proximately caused by Defendant Keely's use of force, was extreme.

47. Defendant Keely's use of force was not reasonably necessary to complete the arrest.

48. A reasonable and prudent officer in Defendant Keely's position would not have used the same amount of force under the same circumstances.

49. Based on the totality of the circumstances, Defendant Keely's act of using a motor vehicle or SUV as a weapon against Samuel amounted to deadly force and was objectively unreasonable under the circumstances.

50. As the Sixth Circuit has unequivocally stated, "a car can be a deadly weapon." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

51. Samuel was unarmed and did not pose a threat to Defendant Keely's or any other person's safety.

52. When he used his car as a weapon against Samuel, Defendant Keely had no information to support a reasonable suspicion that Samuel was dangerous.

53. Defendant Keely's use of excessive force caused the traumatic injuries that led to Samuel's death. Such injuries were a reasonably foreseeable consequence of Defendant Keely's use of excessive force.

54. As the direct and proximate result of Defendant Keely's use of excessive force, Samuel necessarily sustained damages when he was killed, including but not limited to:

    a.    Fright and shock;

    b.    Denial of social pleasure and enjoyments, past and future;

    c.    Embarrassment, humiliation, or mortification;

    d.    Punitive damages;

    e.    Denial and deprivation of his freedom of movement;

    f.    Denial and deprivation of civil rights;

    g.    Denial and deprivation of due process;

    i.    The Estate, which incorporates Samuel Sterling's heirs at law, is entitled to certain damages that minimally include "reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased," MCL 600.2922 (6); and all other lawful damages that Samuel would have been able to recover had he lived in accordance with but not limited to MCL 600.2921 and MCL 600.2922.

**WHEREFORE**, Plaintiff respectfully demands a monetary judgment for damages against Defendant together with costs, interest, and attorney fees so wrongfully incurred.

### COUNT II
### STATE LAW CLAIM – GROSS NEGLIGENCE
### WILLFUL & WANTON MISCONDUCT
### AS TO DEFENDANT BRIAN KEELY

55. Each of the above paragraphs are incorporated here by reference.

56. Defendant Keely owed certain duties to the general public, including Samuel, to act reasonably and lawfully while operating the SUV, and to avoid the use of unnecessary and/or excessive force.

57. Defendant Keely demonstrated a reckless disregard of his legal duties, as well as a substantial lack of concern as to whether death or injury could result from his actions.

58. Instead, Defendant Keely was grossly negligent and breached his duties to Samuel in a number of ways, including but not limited to:

    a.    Failing to de-escalate;

    b.    Failing to act reasonably under the circumstances;

    c.    Failing to wait for back-up;

    d.    Failing to establish a perimeter;

    e.    Failing to create sufficient space between the SUV and Samuel's body;

    f.    Failing to warn Samuel before using the SUV against him as a lethal weapon;

    g.    Failing to employ other methods of detainment, arrest, and/or apprehension, including but not limited to allowing Samuel to flee;

    h.    Using the SUV as an instrument of deadly force;

    i.    Operating the SUV in a manner that is reckless or that is in willful or wanton disregard for the safety of others in violation of MCL 257.626;

    j.    Operating the SUV in a careless or negligent manner in violation of MCL 257.626b;

    k.    Operating the SUV too fast for the conditions;

    l.    Failing to keep a proper lookout while operating the SUV;

    m.    Failing to stop the SUV within an assured cleared distance of Samuel; and

    n.    All other breaches learned over the course of litigation.

59. As the direct and proximate result of Defendant Keely's grossly negligent, wanton and willful acts and/or omissions, Samuel sustained damages when he was unlawfully and unnecessarily killed, including but not limited to:

    a.    Fright and shock;

    b.    Denial of social pleasure and enjoyments;

    c.    Embarrassment, humiliation, or mortification;

    d.    All other damages learned through the course of discovery that are recoverable under the law; and

    e.    The Estate, which incorporates Samuel Sterling's heirs at law, is entitled to certain damages that minimally include "reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation

for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased," MCL 600.2922 (6); and all other lawful damages that Samuel would have been able to recover had he lived, in accordance with but not limited to MCL 600.2921 and MCL 600.2922.

60. Samuel was neither comparatively nor contributorily negligent.

61. Defendant Keely is not immune from liability pursuant to the gross negligence exception to immunity of government employees. MCL 691.1407(2)(c).

**WHEREFORE**, Plaintiff respectfully demands a monetary judgment for damages against Defendant together with costs, interest, and attorney fees so wrongfully incurred.

**VEN JOHNSON LAW, PLC**

/S/ Ven R. Johnson
VEN R. JOHNSON (P39219)
AYANNA D. HATCHETT (P70055)
Attorneys for Plaintiff
535 Griswold Street, Suite 2600
Detroit, MI 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
ahatchett@venjohnsonlaw.com

Dated: January 24, 2025

# UNITED STATES DISTRICT COURT
# IN THE WESTERN DISTRICT OF MICHIGAN

ANDRICA CAGE, as Personal
Representative of the ESTATE OF
SAMUEL STERLING, deceased,

   Case No.
   Hon.

*Plaintiff*,

v.

BRIAN KEELY,
in his individual capacity,

*Defendant.*

---

## JURY DEMAND

Plaintiff respectfully requests a trial by jury of all issues so triable in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **VEN JOHNSON LAW, PLC**

        /S/ Ven R. Johnson
        VEN R. JOHNSON (P39219)
        AYANNA D. HATCHETT (P70055)
        Attorneys for Plaintiff
        535 Griswold Street, Suite 2600
        Detroit, MI 48226
        (313) 324-8300
        vjohnson@venjohnsonlaw.com
        ahatchett@venjohnsonlaw.com

Dated:  January 24, 2025