# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANDRICA CAGE, as Personal
Representative of the ESTATE OF
SAMUEL STERLING, (*deceased*),

    Plaintiffs,

v.

BRIAN KEELY, in his individual capacity,
and THE UNITED STATES OF AMERICA

    Defendants,

No.: 1:25-cv-00089-HYJ-MV

Hon. Hala Y. Jarbou
Chief United States District Judge

Hon. Maarten Varmaat
United States Magistrate Judge

---

## BRIEF IN SUPPORT OF BRIAN KEELY'S MOTION TO DISMISS

## ORAL ARGUMENT REQUESTED

## INTRODUCTION

The case *sub judice* represents the civil iteration of a matter that began with criminal charges being filed against Defendant Brian Keely, a duly deputized Special Deputy United States Marshal – charges that were dismissed pursuant to the Supremacy Clause some thirteen months and several hearings later. Plaintiffs filed the instant case with full knowledge of Defendant Keely was a federal officer acting under color of federal law *as* a federal officer performing duties authorized under federal law, *see generally Michigan v. Keely*, No. 1:25-cr-115, 2025 WL 1513194, at

1

*7 (W.D. Mich. May 28, 2025) (hereinafter "*Keely II*") ("There is no dispute that apprehending Sterling was one of Keely's duties as a member of the U[nited] S[tates] M[arshall] S[ervice] task force, and that he was attempting to fulfill this [federal] duty on April 17, 2024. Accordingly, he satisfies the "authorized act" prong of the test for immunity."); *see also Michigan v. Keely*, No. 1:24-cv-682, 2024 WL 3934001, at *7 (W.D. Mich. Aug. 26, 2024) (holding Keely a "federal officer") (hereinafter "*Keely I*").

Despite these rulings, one wellnigh a year old,[1] Plaintiff, apparently living by the maxim that "the third try is the charm," chooses to continue to assert that Deputized Federal Defendant was acting under color of state law, contradicted by this Court's holdings in *Keely I* and *Keely II* (as well as precedent of virtually every Circuit Court).[2] *See generally* ECF Doc. No. 1 at ¶¶ 7, 9 (PageID.2-3) (hereinafter "Complaint" or "Compl.").

Even were the Court to construe the Section 1983 count as a *Bivens* claim, recent jurisprudence makes clear the narrow confines of permissible *Bivens* actions,

---

[1] This Court's holding in *Keely I* significantly predates the filing of the complaint.

[2] Per statutory mandate, 34 USCA § 41503, the USMS partners with local law enforcement, deputized pursuant to regulation, 28 C.F.R. § 0.112, to apprehend fugitives, and thus there is a rich body of law addressing the federal nature of such federal-state USMS partnerships discussed below. *See infra* Section III.

*see generally Egbert v. Boule*, 596 U.S. 482 (2022). This case seeks to expand *Bivens* beyond those confines —exactly what the Supreme Court proscribes. *Id.* at 492.

Bringing *Bivens* under a different legal theory, based on a new fact pattern, and against a new class of defendant, where alternative remedies exist, is bringing *Bivens* into "a new context." Reason counsels against creating yet more judicial remedies where alternative remedies already exist.

Pretermitting the above, the case is bound to fail on qualified immunity grounds. There is no question that Deputized Federal Defendant was acting within the scope of his authority and that his actions were both objectively and subjectively reasonable satisfying *Graham v. Connor*:

> Finally, to the extent the Fourth Amendment plays a role in assessing the reasonableness of Keely's conduct or his authority to act under federal law, the Court finds that his actions were reasonable . . . even if Keely's actions were risky, he made a reasonable decision to try to block or deter Sterling from entering the restaurant in order to prevent more serious risks to the public and to the officers created by Sterling's flight.

*Keely II*, 2025 WL 1513194, at *10 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). While this finding and ruling stems from the related and predecessor criminal case, this Court cannot be asked to either ignore the facts expounded through hearings or expend judicial resources seeking a ruling inconsistent with the facts and prevailing, well-established case law. The instant civil case must be dismissed.

## **STATEMENT OF FACTS**

Plaintiff pleads, as it relates to action under color of state law, that:

[(1)] At all relevant times, Defendant Brian Keely ("Keely") was a Detective Sergeant law enforcement officer with the Michigan State Police ("MSP") for over 25 years and an employee of the State of Michigan, acting under color of state law, and within the course and scope of his employment . . .

Compl. at ¶ 7. (PageID.2).

[(2) Deputized Federal Defendant was] assigned to work with MSP's 6th District Special Investigative Services[*], which was a unit that worked with U.S. Marshals Service . . . to arrest individuals with outstanding state and/or federal warrants.

*Id.* at ¶ 9. (PageID.2-3).

[(3) That Deputized Federal Defendant was a deputized federal marshal as of December 2023, but n]otably, the terms of Keely's deputation explicitly stated that his "appointment does not constitute employment by the United States Marshals Service, the United States Department of Justice, or the United States Government. The appointee agrees to perform the duties required under this Special Deputation with the knowledge that he or she is neither entering into an employment agreement with the Federal Government or any element thereof, nor being appointed to any position in the Federal Services by virtue of this Special Deputation."

*Id.* at ¶ 9 n. *. (PageID.2-3).

And (4) that Deputized Federal Defendant was utilizing a Michigan State Police vehicle and Keely was a member of the MPACT task force, a joint task force, launched by "launched by the Kent County Sheriff's Office, Wyoming Police Department, and Kentwood Police Department."

*Id.* at ¶¶ 10, 12 n. †. (PageID.3).

Plaintiff pleads no other facts regarding Deputized Federal Defendant acting under color of state law and none avail the Plaintiff of a remedy.

This Court is entitled to take judicial notice of pleadings – especially those created by this Court. This Court need look no further than the December 11, 2024

Order denying remand (*Keely I*) and the May 28, 2025 order granting Supremacy Clause immunity dismissing the related criminal case (*Keely II*) as well as the briefing and exhibits[3] thereto to find that Plaintiff's allegations regarding the state-based nature of Defendant Keely's actions fail and this Court lacks subject matter jurisdiction over the instant case. Plaintiff has not pled, and the facts provide no support for an allegation of a conspiracy between federal and state actors. *Ibid.* No amount of posturing or advocacy will alter the facts of this tragic case.

Beyond the above, as is relevant to the instant motion, Plaintiff pleads that Deputized Federal Defendant utilized a car as a weapon, Compl. at ¶¶ 52 (PageID.9), that a car may be a weapon, *id.* at ¶ 50, and that "using a motor vehicle or SUV as a weapon against Samuel amounted to deadly force and was objectively unreasonable under the circumstances [,]" *id.* at 49, and that no reasonable officer would have used the same amount of force in like circumstances. *Id.* at ¶48. Finally, Plaintiff pleads that the deceased was "unarmed and did not pose a threat to Defendant Keely's or any other person's safety." *Id.* at ¶ 51. Said allegations meet a similar fate for identical reasons.

## **ARGUMENT**

---

[3] Plaintiff's citation and reliance upon Defendant Keely's Special Deputation eliminates any claim of impropriety, surprise, or ambush. Complaint pg. 2 & 3 (PageID.2-3).

## I.     <u>Standards</u>

Deputized Federal Defendant is mounting (in part) a factual attack on jurisdiction asking this court take judicial notice of the Exhibits and the fact that Deputized Federal Defendant was acting as a joint task force member, specially deputized by the United States Marshalls, to execute arrest warrants. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994) (noting that under Rule 12(b)(1) one can challenge subject matter jurisdiction on the pleading itself (a facial attack) or the factual existence of subject matter jurisdiction (a factual attack)).

A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. *Id.*; *see also L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023). A factual attack, "challenges the factual existence of subject matter jurisdiction." *Cartwright*, 751 F.3d at 759. When ruling on a factual attack, the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Id.* at 759.

The plaintiff bears the burden of establishing that subject matter jurisdiction exists, *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), and the Court has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.*

Finally, Deputized Federal Defendant moves to dismiss for failure to state a claim under the familiar standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *While a*ll well-pleaded allegations contained in the complaint will be considered true and construed in the light most favorable by the plaintiff, *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025), however, mechanical conclusions and mere recitals are insufficient. *Iqbal*, 556 U.S. at 678-79. Under a *Twombly-Iqbal* style analysis, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The principles of these decisions boil down to certain tenants:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint *is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*. [*Twombly*, 550 U.S.] at 555 . . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states *a plausible claim for relief survives a motion to dismiss. Id*., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts *do not permit the court to infer more than the mere possibility* of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678-79 (emphasis added; second alteration original).

These principals are particularly relevant here as Plaintiff's entire basis for subject

matter jurisdiction rests upon unsupported, bare legal assertions regarding Defendant

Keely's legal status which have in fact, and prior to the filing of the instant lawsuit,

been proven at best inaccurate and at worse patently false.

## II.    The Absence of Action Under Color of State Law Is a Jurisdictional Defect.

Currently, only a single count is brought against Deputized Federal

Defendant, an excessive force claim brought under 42 U.S.C. § 1983, *see generally*

Compl., ECF Doc. No. 1; *see also* ECF Doc. No. 18. That count must be dismissed

because Deputized Federal Defendant was not acting "under color" of state law as

Section 1983 requires:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, ***of any State or Territory or the District of Columbia***, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

> 42 U.S.C. § 1983 (emphasis added).

To recover under § 1983, the plaintiff must show that the defendant was acting

'under color' of state law. Put another way, Section 1983 cannot apply to "actions of

federal officials taken under color of federal law." *Ana Leon T. v. Fed. Rsrv. Bank of*

*Chicago*, 823 F.2d 928, 931 (6th Cir. 1987) (citing *Broadway v. Block*, 694 F.2d 979,

981 (5th Cir.1982)). This is recognized across most Circuits, not just the Sixth and Fifth, and has been the law for decades. *See, e.g.*, *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005); *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003); *Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir.1987); *Ellis v. Blum*, 643 F.2d 68, 83 (2d Cir. 1981); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 456 F.2d 1339, 1341 (2d Cir. 1972) (noting on remand from the Supreme Court that "Section 1983[] *does not apply* to federal but only to state officers . . .").

This Court has already heard evidence and concluded as a matter of law hat Defendant Keely was a federal officer acting under color of federal law and thus Section 1983 does not apply. It is clear from his deputation with the USMS that Defendant was a deputized federal agent whose very role with the federal government involved the execution of arrest warrants—specifically in assisting the joint task force of the Michigan State Police and he was acting in that capacity at all times relevant.

Plaintiff's conclusory allegations and bald restatements of legal elements which "do not suffice," *Twombly*, 550 U.S. at 555, and are not well-pleaded facts entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.")

This failure is not simply one of pleading—a matter of failing to state a

claim—but rather one of *jurisdictional* significance, *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981) (holding demonstration of action "'under color of state law,' a *jurisdictional requisite* for a § 1983 action . . .") (emphasis added). This remains active law in the Sixth as well as other,[4] Circuits. *See, e.g.*, *Hassink v. Mottl*, 47 F. App'x 753, 755 (6th Cir. 2002) (affirming dismissal for lack of subject matter jurisdiction where no state action pleaded); *see also Liu v. Runyan*, 46 F. App'x 253, 254 (6th Cir. 2002) (affirming dismissal of Section 1983 action for lack of subject-matter jurisdiction where plaintiff "did not allege that [the defendant] was a state actor"); *Cudejko v. Goldstein*, 22 F. App'x 484, 485 (6th Cir. 2001) (affirming dismissal of Section 1983 action for lack of subject matter jurisdiction because of lack of state action).

There is simply no question Defendant Keely a federal officer, acting under the USMS as a deputized agent of that *federal agency*, and acting under federal law.

---

[4] *See, e.g.*, *Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019) ("We conclude that the complaint failed to provide sufficient factual matter to allege that Keefe was a state actor; therefore, the federal courts lack jurisdiction over this claim."); *Vasilopoulos v. Krovatin Klingman LLC*, 348 F. App'x 708, 709 (3d Cir. 2009) (affirming dismissal for lack of subject matter jurisdiction); *Haynes v. Sacred Heart Hosp.*, 149 F. App'x 854, 855 (11th Cir. 2005) (same); *Rise v. Bagshaw*, No. 1:24-CV-2388-RCL, 2025 WL 1380478, at *6 (D.D.C. May 13, 2025) (collecting cases from D.C. Circuit for same proposition).

The Sixth Circuit has recognized this neatly in *King v. United States*:[5]

> Plaintiff's claims against [Deputized Federal Defendant] may not be brought under § 1983 because [Defendant's] conduct is fairly attributable only to the United States and not to the State of Michigan. Although [Defendant] was a detective [sergeant] with the [Michigan State] Police and was therefore employed by the state, Detective [Keely] was working full time with a [USMS] task force at the time of the incident at issue. Plaintiff has not alleged or demonstrated that the state was involved in authorizing or administering the task force; instead, it appears that the [USMS] managed the operation with the benefit of state resources. Detective [Keely]'s "official character" at the time of the incident was therefore "such as to lend the weight of the [United States] to his decisions." *See Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. As a deputized federal agent, Detective [Keely] carried federal authority and acted under color of that authority rather than under any state authority he may have had as a [Michigan State] Police detective. *See Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) ("[B]ecause Scarazzini and McAllister were federally deputized for their Task Force work, this claim was properly brought ... as a *Bivens* action."); *Majors v. City of Clarksville*, 113 F. App'x 659, 659–60 (6th Cir. 2004) (explaining that a § 1983 claim brought against police officers serving with a DEA task force was "in reality a Bivens claim under the Fourteenth Amendment").

> Plaintiff argues that Detective [Keely] acted under color of state law because the task force was enforcing a state warrant for [Sterling]'s arrest at the time the events giving rise to this case took place. But Plaintiff fails to explain why the "nature and character" of a task force should change based on whether the task force chooses to pursue a state fugitive or a federal fugitive. *Schultz*, 717 F.2d at 304. Plaintiff points out that "[Sterling] had committed no federal crime" and therefore "the officers had no authority independent of Michigan state law to arrest [Sterling]." However, the nature and character of a cooperative federal-state program is determined by the source and implementation of

---

[5] *King* was reversed by the Supreme Court on other grounds in *Brownback v. King*, 592 U.S. 209 (2021) for different reasons.

authority for the program, not for the particular work that the agency chooses, in the exercise of its authority, to perform on a given day. *Cf. id.* at 305 ("That an agency of the state chooses to utilize federal substantive and procedural rules in the exercise of its state law authority does not transform the state law character of its actions."). Thus, as long as the task force's decision to apprehend [Sterling] was made by virtue of an exercise of federal authority, which Plaintiff does not contest, Detective Allen remained a federal agent in the pursuit of a state fugitive. Therefore, the district court correctly concluded that Plaintiff's claims against Detective [Keely] are Bivens claims and not § 1983 claims.

917 F.3d 409, 433 (6th. Cir. 2019) (footnote and citation omitted), *rev'd on other grounds sub nom. Brownback v. King*, 592 U.S. 209 (2021).

Likewise in *Petty v. United States*, 80 F. App'x 986 (6th Cir. 2003), the Sixth Circuit stated that federally deputized local law enforcement officers are federal actors, pointing out that a city police officer assigned to a multi-jurisdictional task force was considered a federal employee for purposes of the Federal Tort Claims Act ("FTCA") "[b]y virtue of his assignment to an FBI-operated task force," while other city police officers involved in the same incident who were not attached to the task force were not subject to the FTCA "because they [were] not federal employees." *Id.* at 987-90.

This law repeats across federal circuits and is the norm: joint state federal law enforcement task force members are found to be federal actors, acting under color of federal law. *Jakuttis v. Town of Dracut*, 95 F.4th 22, 29 (1st Cir. 2024) (affirming dismissal of § 1983 claim when "from the face of the complaint, the '*nature and*

*circumstances'* of Poirier's alleged retaliatory conduct were related to 'the performance of his official duties' to the [Drug Enforcement Administration's ("DEA") Cross Borders Initiative ("CBI")] rather than to the Massachusetts state police")(Emphasis added); *Yassin v. Weyker*, 39 F.4th 1086, 1090–91 (8th Cir. 2022) (finding no § 1983 action available against the defendant who was working on a federal task force rather than in her capacity as a state police officer at the relevant times).

While the Plaintiff attempts to skirt this issue, the *complaint references* and thus acknowledges the terms of the deputization, which demonstrate that Deputized Federal Defendant was indeed a federal officer. Therefore, this Court is free to consider said averment as true. *Schmidt v. PennyMac Loan Servs*., LLC, 106 F. Supp. 3d 859, 865 (E.D. Mich. 2015) (holding court may consider documents outside complaint "'if they are referred to in the plaintiff's complaint and are central to her claim.'") (quoting *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir.1997)). Naturally, whether or not Deputized Federal Defendant is a state or federal actor is of central importance.

Indeed, this court has previously recognized Defendant Keely to be a federal officer for all times relevant, and because Deputized Federal Defendant was a federal actor allowed for substitution of the United States as a party in this action for the state torts. *See, e.g.*, ECF Doc. No.7-9. Plaintiff neither objected not moved in opposition.

That certification, substitution, and order could come as no surprise given this Court's rulings that Deputized Federal Defendant was a federal officer acting under color of federal law in *Keely I* and *Keely II*. Defendant Keeley was acting as a federal officer under federal law at all times relevant to this case.

There is, therefore, simply no cognizable Section 1983 claim, and currently no other counts or claims, that would vest this Court with subject matter jurisdiction over this action—the counts against the United States have been voluntarily dismissed, ECF Doc. No. 18, and in any event, Plaintiff failed to plead that she exhausted all administrative remedies - a prerequisite to the filing of FTCA action. Said failure likely cannot be cured by amendment:

> An FTCA suit "shall not be instituted" until the plaintiff "first" presents the claim to the appropriate federal agency and the agency denies the claim. 28 U.S.C. § 2675(a). In *McNeil v. United States*, the Court held that a suit is "instituted" when "a new action" is "commenced." 508 U.S. 106, 110–11, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). "A civil action is commenced by filing a complaint." Fed. R. Civ. P. 3. So, the Court held, a plaintiff must exhaust administrative remedies before invoking the judicial process. *McNeil*, 508 U.S. at 112, 113 S.Ct. 1980. A plaintiff who fails to comply can't cure that failure by exhausting administrative remedies while the suit is pending: the claim must be reasserted in "a new action." *See id.* at 110–12, 113 S.Ct. 1980.
> Here, the estate raised its FTCA claim in court before presenting it to DHS. *Kellom*, 2021 WL 4026789, at *3. Thus, after exhausting, the estate needed to dismiss its original claim and reassert it in a new action. *See McNeil*, 508 U.S. at 110–12, 113 S.Ct. 1980. The estate didn't.
> Instead, the estate amended its complaint. An amended complaint "supersedes an earlier complaint for all purposes." *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quotation omitted). But that doesn't change the critical fact: the estate "instituted" an FTCA suit before presenting its claim to DHS. *See McNeil*, 508 U.S. at 111–12, 113 S.Ct.

1980. The estate's FTCA proceedings were premature, and the only way to cure that defect was to "commence[ ] a new action." *Id.* at 110, 113 S.Ct. 1980; *see also Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) (holding an amended complaint doesn't cure an exhaustion defect); *Hoffenberg v. Provost*, 154 F. App'x 307, 310 (3d Cir. 2005) (per curiam) (same).

*Kellom v. Quinn,* 86 F.4th 288, 292 (6th Cir. 2023), *cert. denied Kellom v. United States*, 144 S. Ct. 2661, 219 L. Ed. 2d 1286 (2024)

Thus, not only has Plaintiff failed to state a claim, but there is no other basis for federal subject matter jurisdiction, and thus no federal jurisdiction over this matter whatsoever.

### III.    <u>Construing the Complaint as One under *Bivens* Would Be Futile and No Amendment Can Save the Complaint.</u>

This Court should not permit Plaintiff to amend the Complaint to pursue a *Bivens* claim against Deputized Federal Defendant because the amendment would be futile and, for the same reasons, construing the Complaint as a *Bivens* Complaint would be a nugatory and ineffective. Though the Court should "freely give leave when justice requires," Fed. R. Civ. P. 15(a)(2), this case presents a circumstance where the Court should deny a motion to amend because *Bivens* claims against Deputized Federal Defendant would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, *futility of the amendment*, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman*, 371 U.S. at 182). Here, leave to amend would be futile, and the only possible result of an amendment is prolonging litigation[6] against an individual defendant that cannot survive in this Court.

A *Bivens* claim is foreclosed by binding precedent, including the Supreme Court's decision in *Egbert v. Boule*, 596 U.S. 482. That decision, along with ample recent case law from the Supreme Court and circuit courts across the country, demonstrates that a novel *Bivens* remedy should not be entertained and should be dismissed as quickly as possible. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (noting when confronted with a *Bivens* claim a court must first question whether or not claim arises in a new context and that claim will "almost . . .never" be able to proceed) (citing *Hernandez v. Mesa*, 589 U.S. 93 (2020) and *Ziglar v. Abbasi*, 582 U.S. 120 (2017)); *accord Liff v. Off. of Inspector Gen. for U.S. Dep't of Lab.*, 881 F.3d 912, 918 (D.C. Cir. 2018) (holding "it is appropriate to determine the availability of a Bivens remedy at the earliest practicable phase of litigation

---

[6] As cited *supra*, Plaintiff was aware of this Court's holding as a matter of law that Defendant Keely was a federal officer at all times relevant yet Plaintiff filed the instant claims pursuant to 42 USC §1983.

because it is ''antecedent' to the other questions presented . . .'") (quoting *Hernandez v. Mesa*, U.S.  582 U.S. 548, 553 (2017)).

The Supreme Court explicitly disapproves of usurping the legislative function and creating new judicial remedies:

> To ensure respect for these foundational principles, the Supreme Court devised a two-part inquiry to determine when we should engage in the "disfavored judicial activity" of recognizing a new *Bivens* action. And under this exacting test, ***the answer will almost always be never.***

*Elahady*, 18 F.4th at 883 (citations omitted).

Unlike 42 U.S.C. § 1983, which statutorily provides for damages against *state officers* for constitutional violations, Congress never "create[d] an analogous statute for federal officials." *Ziglar v. Abbasi*, 528 U.S. 120, 130 (2017). It is only in those instances, recognized by the Supreme Court, that may give rise to a *Bivens* action. Those include (1) an implied damages remedy against narcotics agents for an alleged warrantless entry, search, and arrest inside a home, *Bivens*, 403 U.S. 388; (2) an implied damages remedy against a legislator for sexual discrimination in employment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3), an implied damages remedy against prison officials whose deliberate indifference to an inmate's emergent medical condition resulted in the inmate's death. *Carlson v. Green,* 446 U.S. 14 (1980). A *Bivens* remedy "is not an automatic entitlement" and "in most instances," it "is unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Where a

court asks itself if the remedy should be afforded, the answer to that question here, as "in most every case," is "no." *Egbert*, 596 U.S. at 492.

The factual circumstances, and indeed almost all other circumstances, of the cases outlined above are critical; the only potential case that could be considered vaguely similar is *Bivens* itself, but this case does not involve the search of a home, a lack of warrant, a search of a person, warrantless entry, narcotics or narcotics agents, *etc.* All of this is likewise rather important. It is almost guaranteed that the mere presence of a warrant and the United States Marshals Service, a federal law enforcement agency would be dispositive in this Circuit:

> [T]his case is meaningfully different because, unlike in *Bivens*, Rinehart and his team were attempting to execute an arrest warrant . . .. *See Ziglar*, 582 U.S. at 139–40 ("A case might differ in a meaningful way because of ... the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted [or] the statutory or other legal mandate under which the officer was operating ...."); *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (explaining that claims challenging warrantless searches are meaningfully different from claims concerning searches and seizures conducted pursuant to a warrant because they "implicate[ ] distinct Fourth Amendment guarantee[s]" and are "governed by different legal standards").
>
>  . . .
>
> Indeed, courts in several recent cases have found that the existence of a warrant creates a new context for *Bivens* purposes. *See, e.g.*, *McNeil v. Duda*, No. 3:22-cv-50096, 2023 WL 2587884, at *2 (N.D. Ill. Mar. 21, 2023) (finding that an unreasonable search claim arose in a new context because federal agents entered the plaintiff's home "pursuant to a valid arrest warrant" for a third party); *Lewis v. Westfield*, No. 16-CV-1057, 2022 WL 16924177, at *3 (E.D.N.Y. Nov. 14, 2022) (finding that the

plaintiffs' claims arose in a new context because the defendants were executing an arrest warrant and therefore were "act[ing] under a different 'legal mandate' than the defendants in *Bivens*" (quoting *Ziglar*, 582 U.S. at 140)); *Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (holding that "the presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*" and collecting cases).

Another meaningful distinction between this case and *Bivens* is the federal agency involved. This case involved the U.S. Marshals Service, while *Bivens* concerned the actions of agents of the Federal Bureau of Narcotics. Thus, allowing [Plaintiff]'s claim would extend *Bivens* to "a new category of defendants," which *Egbert* identified as a new context. 142 S. Ct. at 1803 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see Logsdon v. U.S. Marshal Serv.*, No. 21-253-KHV, 2023 WL 205052, at *3 (E.D. Okla. Jan. 13, 2023) (finding that "Deputy U.S. Marshals" were a new category of defendants that took case outside the *Bivens* context); *Lewis*, 2022 WL 16924177, at *3 (finding that claims arose in a new context because "[t]he defendants [we]re Deputy Marshals, rather than federal narcotics agents"); *Senatus v. Lopez*, No. 20-cv-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022) (declining to extend *Bivens* to "members of a fugitive task force deputized by the United States Marshals"). Although Cain's Fourth Amendment claim bears similarities to the unreasonable search claim raised in *Bivens*, "even a modest extension is still an extension." *Ziglar*, 582 U.S. at 147.

*Cain v. Rinehart,* No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023).

Beyond these differences, *Bivens*, although based on the Fourth Amendment, was not an excessive force claim that involved the USMS and a joint task force; the Eleventh Circuit faced this very question and held:

First, no *Bivens* remedy is available because Ms. Robinson's excessive-force claim arises in a new context—the USMS operating a joint state and federal task force to execute arrest warrants, and special factors counsel hesitation before recognizing a cause of action in this context. This case presents a new context because the Supreme Court has never recognized a cause of action for excessive force against officers operating as part of a USMS joint federal and state task force apprehending fugitives. Notably, in *Egbert*, the Supreme Court recognized that a case presents a new context when it involves a "new category of defendants." 596 U.S. at 492, 142 S.Ct. 1793 (internal quotation marks omitted).

*Robinson v. Sauls*, 102 F.4th 1337 (2024).

Every other circuit addressing this or similar questions  found differences for any number of reasons including the location of the alleged excessive force outside of one's own residence, *see Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (Fourth Amendment claim based on excessive force created a new *Bivens* context because "unlike *Bivens*, none of the events in question occurred in or near [the plaintiff]'s home."); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) ("Byrd's lawsuit differs from *Bivens* in several meaningful ways [, including that the] case arose in a parking lot, not a private home as was the case in *Bivens*."), or in cases involving the USMS, their unique statutory mandate to partner with local law enforcement, *Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1357-58 (10th Cir. 2024); *see also Robinson*, 102 F.4th at 1345, or the administrative remedies available against the USMS (and joint task force members) *Ibid.*

### A. <u>This Suit Presents a "New Context."</u>

The circumstances of this case unquestionably present a new *Bivens* context. The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 589 U.S. at 100. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* Indeed, "a context [is] 'new' if it is 'different in a meaningful way from previous Bivens cases decided by this Court,'" *id.* (quoting *Ziglar*, 528 U.S. at 139), or if it even just "involves a 'new category of defendants,'" *id*. (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The test is easy to meet. Cases with "significant parallels to" *Bivens, Davis,* or *Carlson*, or presenting just a "modest extension" of one of them, are "still an extension" into a *brand-new* context. *Ziglar*, 582 U.S. at 140 (listing seven non-exhaustive indicia for courts to consider).

Here, the category of defendant is new. The Sixth, Eleventh, Tenth, and Second Circuit have all recognized USMS Officers as new categories of defendants, *see Logsdon*, 91 F.4th 1352; *Robinson*, 102 F.4th 1337; *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438; *Edwards v. Gizzi*, 107 F.4th 81, 85 (2d Cir. 2024) (Park, C.J. concurring) (collecting cases). This difference is only compounded by factual differences—a warrantless search of a person in their own home from "stern to stern" in front of his family members, versus the execution of an arrest warrant against a

21

felon occurring in public resulting in a chase concluding with the felon being hit by a vehicle outside a Burger King restaurant by a car. The factual differences are self-evident. The claims here simply do not arise from a warrantless entry by narcotics officers who "manacled" a plaintiff in front of his family and searched his home "from stem to stern." *Bivens*, 403 U.S. at 389.

As the Fifth Circuit has described, "[v]irtually everything" outside the specific facts of *Bivens*, *Davis*, and *Carlson* is a "new context." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021). Thus, after *Ziegler*, many courts have held that uses of force and arrests outside a home are a new *Bivens* context and declined to imply a *Bivens* remedy. *See Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (finding new context and declining to extend Bivens to excessive force claims, in part, based on fact that case did not occur in private residence, against agent who pulled gun to prevent plaintiff from leaving parking lot), *cert. denied*, 142 S. Ct. 2850 (2022); *Oliva*, 973 F.3d at 443 (same, with respect to excessive force claims against Veterans Affairs' officers who tackled plaintiff after failing to show ID when passing through hospital metal detector); *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (finding new context, in part, because case did not involve allegations of entering a home absent warrant).

This is more than enough to demonstrate that the case *sub judice* is *Bivens* in a "new context" and the instant suit cannot serve to provide Plaintiff a remedy against Defendant Keely.

### B. <u>Congress is Better Suited to Address Remedies Here.</u>

When "a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). The Supreme Court has "not attempted to 'create an exhaustive list' of factors that may provide a reason not to extend *Bivens*, but [has] explained that 'central to [this] analysis' are 'separation-of-powers principles.'" *Hernandez*, 589 U.S. at 100 (quoting, *Ziglar*, 582 U.S. at 136). "[I]t is a significant step under separation-of-powers principles for a court to . . . create and enforce a cause of action for damages against federal officials." *Ziglar*, 582 U.S. at 133. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 135 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "If there is a rational reason to think that the answer is 'Congress'—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 596 U.S. at 492.

This inquiry also includes evaluating the availability of "an alternative remedial structure," which "alone may limit the power of courts to infer a new *Bivens*

cause of action." *Ziglar*, 582 U.S. at 137. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). "Importantly, the relevant question [as to the alternative remedial structure] is not whether a *Bivens* action would 'disrup[t]' a remedial scheme, or whether the court 'should provide for a wrong that would otherwise go unredressed[.]'" *Id.* (citations omitted). "Nor does it matter that 'existing remedies do not provide complete relief.'" *Id.* (quoting *Bush*, 462 U.S. at 388); *accord Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability."); *Liff*, 881 F.3d at 921 ("The question is whether alternative remedies exist, not whether they cover the full breadth of harm that a would-be *Bivens* plaintiff alleges."). A "court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Egbert*, 596 U.S. at 493 (quoting *Bush*, 462 U.S. at 388).

While "even a single sound reason to defer to Congress" is sufficient for a court to refrain from extending *Bivens,* many exist herein. *Egbert*, 596 U.S. at 491. Multiple factors counsel against court intrusion on the legislative domain—each recognized by the Sixth, Tenth, and Eleventh Circuits explicitly. The first involves

the fact that the USMS is required to fulfil a statutory mandate and partner with local law enforcement. See Presidential Threat Protection Act of 2000, P.L 106-544. In a case such as this, involving a deputized local law officer, there could be "social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Logsdon v. United States Marshal Serv.*, 91 F.4th at 1359. This alone counsels against creating a new judicial remedy. Moreover, there exist administrative remedies: "alternative remedies for misconduct by Deputy U.S. Marshals suggests that this court should not be the institution to create a remedy . . ." *Id.* (noting that complaint procedures and remedies are provided for both in statute and regulation and that the DOJ Office of Inspector General administers those statutory remedies).

Beyond these reasons explicitly recognized by Circuit Courts in this context, there is the very fact that an FTCA remedy exists should plaintiff wish to pursue it— that alone has been found reason enough to extend *Bivens* no further by multiple courts. See, e.g., *Lovett v. U.S.*, No. 1:23-cv-02879, 2024 WL 4286054, at *7 (Sept. 25, 2024 D.D.C.); *Oliva*, 973 F.3d at 444; *Edwards v. Gizzi*, Civ. A. No. 20-7371, 2022 WL 309393, at *9 (S.D.N.Y. Feb. 2, 2022) (collecting cases where courts found that the FTCA was an alternative remedy that counsels against extending Bivens); *Ohome v. United States,* Civ. A. No. 21-368, 2021 WL 5771147, at *7 (N.D. Ga. Dec. 6, 2021) (declining a Bivens remedy for an airport traveler's

excessive force claim against a customs officer who tackled him onto a baggage carousel in part because "[a]lthough the FTCA is not a substitute for a *Bivens* action, it is still an effective and available remedy to be considered with other special factors"); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (collecting cases and noting "that Carlson's analysis of th[is] issue may not have survived *Ziglar*"); *see also K.O. by & through E.O. v. Sessions*, No. 20-5255, 2022 WL 3008025, at *1 (D.C. Cir. Jul. 29, 2022) (Silberman, J., concurring) (alternative remedy under the FTCA should have been an additional reason to deny a Bivens action, and urging that the Supreme Court overrule *Bivens* as an "egregious example of the Supreme Court of the United States acting like a common law court rather than an Article III court").

This court should join the growing chorus of post-*Ziglar* cases and find that the FTCA and state tort law remedies are among the many reasons here to decline extending *Bivens*. *See Evans*, 2020 WL 9066054, at *8 (finding that the existence of the FTCA as a possible alternative remedy counseled against implying a remedy under *Bivens*); *Bivins*, 2020 WL 134115, at *4 (same); *Crocker v. USP 1 Coleman*, Civ. A. No. 20-568, 2022 WL 272173, at *5 (M.D. Fla. Jan. 6, 2022) (finding FTCA was alternative remedy for inmate excessive force claim); *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) (holding FTCA and state tort law were processes that precluded excessive force claims against DEA agent).

Finally, Congress' own inaction since 1971, the year *Bivens* was decided, speaks against creating a new remedy which Congress has chosen not to create.

Congress has paid close attention to the potential for federal law enforcement to use excessive force, and yet has never approved of a *Bivens* remedy against such officers. As enacted, the FTCA did not waive the United States' sovereign immunity for assault, battery, false arrest, or false imprisonment claims. 28 U.S.C. § 2680(h). But, in 1974, Congress amended the FTCA "in the wake of *Bivens*," creating its so-called "law enforcement proviso" and waiving immunity for certain intentional tort claims against federal law enforcement agents. *Gray v. Bell*, 712 F.2d 490, 507 (D.C. Cir. 1983). But Congress did not then, nor in the decades since, ever approve of federal officers being personally liable for alleged constitutional violations. *See Snowden v. Henning*, Civ. A. No. 19-1322, 2021 WL 806724, at *5 (S.D. Ill. Mar. 3, 2021) ("By enacting the law enforcement proviso, Congress signaled that it does not want a damages remedy against individual federal agents."). That Congress has repeatedly tried, unsuccessfully, to enact a statutory Bivens remedy "does not compel [courts] to step into [Congress's] shoes." *Hernandez*, 589 U.S. at 113. Rather, an inability to pass such a law successfully speaks to the democratic process choosing to reject such a remedy and the current amendment representing the will of the legislature.

IV.    **Qualified Immunity Bars This Claim against Both a Federal and State Actor Just as Supremacy Clause Immunity Bars a Criminal Prosecution.**

Qualified immunity is available to both federal and state actors. *See generally Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting qualified immunity defense available under both § 1983 and *Bivens* action and that "the qualified immunity analysis is identical under either cause of action"). The defendant bears the initial burden of raising the defense and demonstrating that he, or she, was acting in the scope of their duties; however, once a defendant has raised the defense the burden ultimately rests with the plaintiff to "demonstrate both that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al–Kidd*, [563] U.S. [731, 741] (2011) (internal quotation marks omitted). If the plaintiff fails to establish either element, the defendant is immune from suit." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).

Here, Defendant Keely was executing an arrest warrant, *i.e.*, doing exactly what his job as a special deputy marshal. *See generally Keely I & Keely II*.

Moreover, the acts complained of could not have violated clearly established law because the same acts are judged under a *Graham* reasonableness standard. *See Wilson*, 526 U.S. at 404 (citing Graham v. Connor, 490 U.S. 386, 388 (1989)); *see*

*also  Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) *("[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard....") (quoting *Graham v. Connor*, 490 U.S. at 390 (1989)).

A qualified immunity analysis is shockingly similar to the analysis utilized in determining Supremacy Clause immunity—and logically would always be met because qualified immunity requires only a finding of objective reasonableness, while supremacy clause immunity requires both objective and subjective reasonableness. *See generally Wyoming v. Livingston*, 443 F.3d 1211, 1222 (10th Cir. 2006) (comparing and contrasting Supremacy Clause immunity and reserving the issue of whether such required a showing beyond that of qualified immunity, *i.e.*, subjective belief).

The Sixth Circuit in *Long,* examined Supremacy Clause immunity and the necessary and proper analysis and stated that the key issue in a "necessary and proper" inquiry is whether the federal officer "employed means which he could consider reasonable in the discharge of his duty." *Com. of Ky. v. Long*, 837 F.2d 727, 745 (6th Cir. 1988). The court then noted that the "necessary and proper" test contains both an objective and subjective component. *Id.* "On the subjective side, the agent must have an honest belief that his action was justified. On the objective side, his

belief must be reasonable." *Id.*

Here, this Court analyzed Defendant Keely's conduct finding it to be objectively reasonable in *Keely II*. This finding was predicated on a finding that Decedent Sterling, a fleeing, violent fugitive and felon, presented a danger to federal officers – including Defendant Keely, state and local officers, and the public at large. However, this Court found this case did not rise to an analysis of excessive or deadly force as Decedent Sterling's conduct caused the impact with Defendant's Keelys USMS vehicle – the impact outlined in the Complaint- that ultimately resulted in his death.

"[T]he Fourth Amendment prohibits a police officer's use of deadly force to seize an unarmed, non-dangerous suspect." *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir.2005) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Rather, the use of deadly force is only constitutionally permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others...." *Garner*, 471 U.S. at 11; *see also Sample*, 409 F.3d at 697 (noting that "only in rare instances may an officer seize a suspect by use of deadly force").

The *Graham* court identified three factors to consider in determining the reasonableness of force used: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight.

*Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir.2006).

This Court, in *Keely II* in fact, has already considered those factors and already found Defendant Keely's actions objectively reasonable:

> Finally, to the extent the Fourth Amendment plays a role in assessing the reasonableness of Keely's conduct or his authority to act under federal law, the Court finds that his actions were reasonable . . . even if Keely's actions were risky, he made a reasonable decision to try to block or deter Sterling from entering the restaurant in order to prevent more serious risks to the public and to the officers created by Sterling's flight.

*Keely II*, 2025 WL 1513194, at *10 (citing *Graham*, 490 U.S. at 396).

This Court should follow on the logic and rationale of *Long, Wyoming v. Livingston¸* 443 F.3d. 1211 (10th Cir. 2006), *Texas v. Kleinert, 855 .F3d. 305 (5th Cir. 2017)¸* and other cases by dismissing the instant case *instanter* and serve the purposes of qualified immunity namely in disposing of cases involving immunity as quickly as possible, *see Long*, 837 F.2d at 752 (analogizing Supremacy Clause immunity to qualified immunity and concluding that in both situations, courts have a duty to make early rulings on immunity issues to avoid excessive interference with official actions); *Harlow v. Fitzgerald*, 457 U.S. 800, 816-19 (1982) (eliminating subjective element of qualified immunity inquiry because keeping analysis would expose to suits and incur costs, disruption, time, and could rarely be decided before summary judgment). It is axiomatic that where a government actor has been afforded Supremacy Clause immunity in the criminal context he should be afforded qualified

immunity in the civil context for the selfsame behavior.

This can only benefit the court system and serve the purposes of qualified immunity as announced by the Supreme Court in *Harlow*:

> In the context of *Butz*' attempted balancing of competing values, it now is clear that substantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service. There are special costs to "subjective" inquiries of this kind. Immunity generally is available only to officials performing discretionary functions. In contrast with the thought processes accompanying "ministerial" tasks, the judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions. These variables explain in part why questions of subjective intent so rarely can be decided by summary judgment. Yet they also frame a background in which there often is no clear end to the relevant evidence. Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government.
>
> Consistently with the balance at which we aimed in *Butz*, we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 816-18.

## **CONCLUSION**

As this Court has already determined Defendant Keely's actions were

objectively reasonable, it benefits no one to have a lawsuit which is frivolous proceed into discovery simply to relitigate a matter already decided. It most certainly does not serve the purpose of quickly disposing an action and avoiding disruption to the government. This Court should dismiss the instant case.

This 30th day of June, 2025.

*Respectfully submitted,*

/s/ Lance J LoRusso
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm
1827 Powers Ferry Rd.,
Bldg. 8, Ste. 200
Atlanta, GA 30339
(770) 644-2378
Email: lance@lorussolawfirm.com

*/s/ G. Gus Morris*
G. Gus Morris
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email: gmorris@mcgrawmorris.com

/s/ John Gemellaro
John Gemellaro
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email:
jgemellaro@mcgrawmorris.com

*Attorneys for Defendant Brian Keely*

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ANDRICA CAGE, as Personal Representative of the ESTATE OF SAMUEL STERLING, (*deceased*), | No.: 1:25-cv-00089-HYJ-MV |
| Plaintiffs, | Hon. Hala Y. Jarbou<br>Chief United States District Judge |
| v. | Hon. Maarten Varmaat<br>United States Magistrate Judge |
| BRIAN KEELY, in his individual capacity, and THE UNITED STATES OF AMERICA | |
| Defendants, | |

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant, certifies that this brief contains less than 10,800 words, which complies with the word limit of Local Rule 7.2(b)(i) for "dispositive motions" as defined in Local Civil Rule 7.2(a).

Respectfully submitted this 30th day of June, 2025.

<u>/s/ Lance J LoRusso</u>
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm
1827 Powers Ferry Rd.,
Bldg. 8, Ste. 200
Atlanta, GA 30339
(770) 644-2378
Email: lance@lorussolawfirm.com

_/s/ G. Gus Morris_
G. Gus Morris
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email: gmorris@mcgrawmorris.com

/s/ John Gemellaro
John Gemellaro
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email:
jgemellaro@mcgrawmorris.com

_Attorneys for Defendant Brian Keely_

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| ANDRICA CAGE, as Personal Representative of the ESTATE OF SAMUEL STERLING, (*deceased*),<br><br>       Plaintiffs,<br><br>v.<br><br>BRIAN KEELY, in his individual capacity, and THE UNITED STATES OF AMERICA<br><br>       Defendants, | No.: 1:25-cv-00089-HYJ-MV<br><br>Hon. Hala Y. Jarbou<br>Chief United States District Judge<br><br><br>Hon. Maarten Varmaat<br>United States Magistrate Judge |

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the within and foregoing with the Clerk of

Court using the CM/ECF system.

Respectfully submitted this 30th day of June, 2025.

<u>/s/ Lance J LoRusso</u>
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm
1827 Powers Ferry Rd.,
Bldg. 8, Ste. 200
Atlanta, GA 30339
(770) 644-2378
Email: lance@lorussolawfirm.com

_/s/ G. Gus Morris_
G. Gus Morris
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email: gmorris@mcgrawmorris.com

/s/ John Gemellaro
John Gemellaro
McGraw Morris PC (Troy)
2075 W Big Beaver Rd., Ste. 750
Troy, MI 48084
(248) 502-4000
Email:
jgemellaro@mcgrawmorris.com

_Attorneys for Defendant Brian Keely_